**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|                            |     |                          |
|----------------------------|-----|--------------------------|
|                            | )   |                          |
|                            | )   |                          |
| VERNON JACKSON,            | )   |                          |
|                            | )   |                          |
| Petitioner,                | )   |                          |
|                            | )   | Criminal No. 04-299      |
| vs.                        | )   | Civil No. 07-1525        |
|                            | )   |                          |
| UNITED STATES OF AMERICA,  | )   | Judge Nora Barry Fischer |
|                            | )   |                          |
| Respondent.                | )   |                          |
|                            | )   |                          |

## MEMORANDUM OPINION

### I.     INTRODUCTION

_____This matter is before the Court on a Motion to Vacate, Set Aside or Correct Sentence [459] under 28 U.S.C. § 2255 filed by Petitioner Vernon Jackson and as later amended in an Amended Motion.[1] (Docket No. 490-2).   Petitioner claims that his Sixth Amendment right to effective assistance of counsel was violated because his counsel failed to file a notice of appeal after his sentencing, despite an explicit request from him to do so.   The Government maintains that Petitioner's Motion should be denied as he waived his right to file a motion under 28 U.S.C. § 2255 and to appeal his sentence in a plea agreement and that his claims are otherwise meritless.   Based on the following, said Motion [459] is DENIED.

### II.    BACKGROUND

On October 27, 2004, a Criminal Complaint and Arrest Warrant were issued for Petitioner,

---

[1]     The circumstances surrounding the submission of Petitioner's Amended Motion to the Court are further detailed in § III _infra_.

who was then arrested. (*See* Docket No. 1). After a detention hearing, Petitioner was held without bond pending trial. (Docket No. 8). Thereafter a federal grand jury in the Western District of Pennsylvania returned a one count indictment against Petitioner and seven co-defendants charging them with conspiracy to distribute and to possess with the intent to distribute one hundred (100) grams or more of heroin from in or around May 2004 to on or about October 27, 2004, in violation of 21 U.S.C. § 846. (*See* Docket No. 11). On March 30, 2005, a federal grand jury returned a one count superseding indictment against Petitioner and four co-defendants, charging them with conspiracy to distribute and to possess with the intent to distribute one kilogram or more of heroin from in or around 2002 to on or about October 27, 2004, in violation of 21 U.S.C. § 846. (Docket No. 67). Subsequently, the federal grand jury returned a six-count second superseding indictment against Petitioner and his co-defendants Duane Moore, Khalid Burris, Jacqulyn Jackson, William Payne and Douglas Caplan on August 20, 2005, adding money laundering charges.[2] (Docket No. 117). Jury selection and trial for this matter were set to commence on September 26, 2006.

[2]
    The disposition of the charges against Petitioner's co-defendants in this matter involved the following. Khalid Burris pled guilty to count one of the superseding indictment on September 19, 2006 (Docket No. 288), and was sentenced on December 15, 2006 to 120 months imprisonment and five years of supervised release (Docket No. 346). William Payne pled guilty to count one of the superseding indictment on September 22, 2006, (Docket No. 296) and was sentenced on December 22, 2006 to 120 months imprisonment and eight years of supervised release (Docket No. 364). As discussed in further detail below, Jacqulyn Jackson and Petitioner both pled guilty on September 26, 2006, at the time of jury voir dire proceedings. Douglas Caplan proceeded to trial and on October 19, 2006, a jury found him guilty of count two of the second superseding indictment, but he was acquitted on counts three through six. (Docket No. 314). Caplan was sentenced to 48 months imprisonment and 2 years of supervised release on January 26, 2007. (Docket No. 380). Finally, Duane Moore was not arrested until December 1, 2006. (Docket No. 330). He later pled guilty to counts one and two of the second superseding indictment on April 3, 2007, (Docket Nos. 412-413), and was ultimately sentenced to a term of imprisonment of 120 months at each of counts one and two, to be served concurrently (Docket No. 416).

A.    *Petitioner's Appointed Counsel*

Petitioner changed his counsel several times throughout this matter. Initially, he was represented by Paul R. Gettleman, Esq., who later withdrew. (*See* text only entry of Jan. 9, 2006). Robert Stewart, Esq. was then appointed as Petitioner's counsel on September 13, 2005. (Docket No. 132). Mr. Stewart filed a motion to withdraw as counsel on June 2, 2006 citing a potential conflict of interest. (Docket No. 208). Said motion was granted by the Court on June 5, 2006. (Docket No. 209). Charles M. Schwartz, Esq. was next appointed as Petitioner's counsel on June 6, 2006. (Docket No. 210). Mr. Schwartz filed a motion to withdraw on July 18, 2006, citing multiple irreconcilable scheduling conflicts as trial was scheduled to commence on September 25, 2006 and last four to six weeks. (Docket No. 222). Said motion was granted by the court on July 21, 2006. (Docket No. 223).

Chris Rand Eyster, Esq. was then appointed to serve as Petitioner's counsel on July 21, 2006. (Docket No. 226). However, Petitioner filed a motion to appoint new counsel and to disqualify attorney Chris Rand Eyster, Esq. on August 21, 2006. (Docket No. 250). A motion hearing was held on September 25, 2006 before the Honorable Thomas Hardiman at which time testimony and argument were heard concerning Petitioner's motion as well as a motion to dismiss under the Speedy Trial Act filed by his counsel on September 24, 2006 and a motion to strike the venire panel. (Docket No. 299). With respect to the motion to disqualify counsel, Mr. Eyster represented to the Court that Petitioner expressed some dissatisfaction with him and his former counsel in that Petitioner believed "that the Government offered him a deal and he did not have an opportunity to communicate to myself whether he accepted it or rejected it." (Docket No. 484 at 5). Petitioner testified that Mr. Eyster made him miss a plea deal that the government had offered as he was

unavailable to discuss it with him and did not schedule the change of plea. *Id*. at 5-8. Mr. Eyster than generally outlined the plea negotiations in which he was involved on Petitioner's behalf. *Id*. at 9.

He offered that the "missed" deal that Petitioner described involved Petitioner pleading guilty to count one of the second superseding indictment and the parties' stipulation that the amount of heroin for Guideline calculations purposes would be between one and three kilograms. *Id*. at 8-9. Mr. Eyster maintained that this deal was rejected by Petitioner because he would be facing a mandatory minimum of ten years and he wanted the stipulation to involve less than one kilogram, which would not subject him to the mandatory minimum. *Id*. at 9. He further stated that there were other deals, one of which involved both Petitioner and his wife/co-defendant Jacqulyn Jackson. *Id*. In that deal, Petitioner would plead guilty to counts one and two of the second superseding indictment, with certain stipulations, and Ms. Jackson would plead guilty to count one and stipulate to lesser amounts as well as receive the benefit of a 5k motion. *Id*. Mr. Eyster asserted that Ms. Jackson would not accept this deal which caused the negotiations to fall apart. *Id*. at 9-10. Both Mr. Eyster and Petitioner also offered statements regarding Petitioner's access to *Jencks* and other discovery materials. Ultimately, the Court denied Petitioner's motion to disqualify finding that there was communication between Petitioner and Mr. Eyster and that disqualification was not warranted under the circumstances. *Id*. at 15. The Court also denied Petitioner's motion to dismiss and his motion to strike the venire panel. *Id*. at 14-15, 25-27.

B.      *Petitioner's Guilty Plea*

On September 26, 2006, Petitioner pled guilty in open court before the Honorable Thomas Hardiman to counts one and two of the second superseding indictment at Criminal No. 04-299: (1)

conspiracy to distribute one kilogram or more of heroin from in or around 2002 to on or about

October 27, 2004, in violation of 21 U.S.C. § 846; and (2) conspiracy to launder money instruments,

from in or around May 2003 to on or about October 27, 2004, in violation of 18 U.S.C. § 1956(h).

(Docket No. 304). Petitioner's guilty plea was made pursuant to the terms of a written plea

agreement between Petitioner and the Government, signed on the date his guilty plea was entered.

(*See* Docket No. 305).

1. Written Plea Agreement

In addition to the guilty plea on the above counts, the written plea agreement required

Petitioner to "acknowledge responsibility for the conduct charged at counts 3, 4, 5, and 6 of the

Second Superseding Indictment," pay a special assessment to the Clerk of Court, waive former

jeopardy or double jeopardy claims, and waive certain appeal rights. (Docket No. 305 at 1-2). With

regard to his appellate rights, Petitioner specifically agreed to:

> [waive] the right to take a direct appeal from his conviction or
> sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the
> following exceptions:
>
> > (a) If the United States appeals from the sentence, Vernon
> > Jackson may take a direct appeal from the sentence.
> >
> > (b) If (1) the sentence exceeds the applicable statutory limits
> > set forth in the United States Code, or (2) the sentence
> > unreasonably exceeds the guideline range determined by the
> > Court under the Sentencing Guidelines, Vernon Jackson may
> > take a direct appeal from the sentence.
>
> The foregoing reservations of the right to appeal on the basis of
> specified issues do not include the right to raise issues other than
> those specified.
>
> Vernon Jackson further waives the right to file a motion to vacate
> sentence, under 28 U.S.C. § 2255, attacking his conviction or

sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

(Docket No. 305 at 2). The plea letter concludes with the following provision: "[t]his letter sets forth the full and complete terms and conditions of the agreement between Vernon Jackson and the United States Attorney for the Western District of Pennsylvania, and there are no other agreements, promises, terms or conditions, express or implied." (Docket No. 305 at 5). In addition, the final page states that: "I have received this letter from my attorney, Chris Rand Eyster, Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my agreement with the Office of the United States Attorney for the Western District of Pennsylvania. I affirm that there have been no additional promises or representations made to me by any agents or officials of the United States in connection with this matter." (Docket No. 305 at 6) The plea agreement is executed directly below this passage by Vernon Jackson dated 9/26/06 and as witnessed by Chris Rand Eyster, Esquire, counsel for Vernon Jackson. (*Id.*).

2.     Change of Plea Hearing

At the change of plea hearing, Petitioner was placed under oath and asserted that he understood that any untruthful statements that he made were subject to penalties of perjury. (Docket No. 485 at 2-3). Petitioner was thirty-eight years old, high school educated, and asserted that he could read, write and understand the English language at the time of his guilty plea. (Docket No. 485 at 5-6). He acknowledged that he read and reviewed the entire indictment with his counsel, that he understood the charges against him, and that he intended to plead guilty to counts one and two of the second superseding indictment charging him with conspiracy to distribute heroin and money laundering, respectively. (*Id.* at 3-5). Petitioner was advised of all of his trial rights by the Court,

which he asserted that he understood and that by pleading guilty to the charges he acknowledged he was waiving those rights, which he also understood. (*Id*. at 5-8).

The Court advised Petitioner of the possible penalties for each charge including that he was subject to "not less than ten years and not more than life imprisonment" for the heroin conspiracy and up to a maximum of twenty years for the money laundering conspiracy. (*Id*. at 9). Petitioner was also informed of the applicable terms of supervised release and the penalties associated with violating the conditions of supervised release. (*Id*. at 9-10).

The Court next informed Petitioner of the Sentencing Guidelines and the advisory nature of the same under the Supreme Court decision in *Booker*. (*Id*. at 10-13). Petitioner asserted that he understood that the Court could not compute the Guideline range for his case until after a Presentence Investigation Report was prepared and both parties had an opportunity to object to the same. (*Id*. at 11). After invitation from the Court, counsel for the Government and Petitioner both offered their projections as to the applicable Guideline range. (*Id*. at 12-13). Counsel for the Government indicated that he "had not done a detailed Guidelines calculation" but estimated that Petitioner's offense level would be 30 after a two level reduction for acceptance of responsibility which the Government had agreed to in the plea agreement. (*Id*.). That estimation in connection with his "best estimate" that Petitioner would have a criminal history category of II, resulted in an estimated Guideline range of 108-135 months except that Petitioner was subject to a mandatory minimum sentence of 120 months. (*Id*.). Petitioner's counsel generally agreed with that calculation except that he argued that Petitioner was entitled to a three level reduction for acceptance of responsibility. (*Id*.).

The Court explained to Petitioner and he confirmed that he understood that "after it has been

determined what Guidelines range [ ] applies to a case, the Judge has the authority to depart from that Guideline range and impose a sentence that is more severe, that is, longer, or less severe, that is, shorter, than that called for by the Guidelines, as long as the sentence imposed is within the statutory range and is reasonable." (*Id*. at 13-14). Subsequently, the Court questioned Petitioner about his potential waiver of appellate rights, to which Petitioner answered in the affirmative. Specifically, the Court posed the following:

> THE COURT: Do you also understand that, unless waived by agreement, you or the Government may have the right to appeal any sentence that I impose?
>
> THE DEFENDANT: Yes, sir.

(Docket No. 485 at 14). Thereafter, the plea agreement was handed to the Petitioner, who acknowledged that he had signed the agreement. (*Id*. at 14). He also answered affirmatively to questioning that he had read and reviewed the plea agreement fully with his counsel. (*Id*.). Further, Petitioner responded affirmatively that he understood the contents of the agreement and that such agreement was the entire understanding and agreement between him and the Government regarding the charges against him. (*Id*.).

Subsequently, Assistant United States Attorney Troy Rivetti, Esq., described to the Court the Government's evidence against the Petitioner, outlining his extensive role in conspiracies to distribute heroin and launder money. (*Id*. at 13-34). Petitioner replied in the affirmative when questioned if he agreed with the Government's description of his criminal conduct and asserted that he still intended to plead guilty to the charges against him. (*Id*. at 34). Petitioner's counsel, Chris Eyster, Esq., affirmed that the entry of a guilty plea by Petitioner was consistent with his advice to Petitioner. (*Id*.). Thereafter, Petitioner affirmed that he was not forced to plead guilty, that he had

not been offered or promised anything in exchange for his guilty plea other than that set forth in the plea agreement and that his guilty plea was his own free and voluntary act.  (*Id*. at 35).  The Court next questioned Petitioner in the following manner:

> THE COURT: Are you satisfied in all respects with the advice and representation of your counsel?
>
> THE DEFENDANT:  Yes, sir.

(*Id*. at 35).  Upon request of the Court, the terms of the plea agreement were then read in open court by Mr. Rivetti.  (Docket No. 485 at 36-39).

> Mr. Jackson agrees in part A of the letter that he will plead guilty to counts one and two of the second superseding indictment, which the Court has already reviewed with him here in open court today.
>
> He acknowledges his responsibility for the conduct charged in counts three through six of the second superseding indictment and stipulates that that conduct charged therein can be considered by the probation office or the court in imposing sentence.
>
> He agrees to pay a two hundred dollars special assessment. He waives any form of jeopardy or double jeopardy claims he had in connection with any related, civil or administrative, actions. He waives his right to take a direct appeal from the conviction or sentence, subject to two exceptions.
>
> First, if the United States appeals from the sentence, then he can take a direct appeal from the sentence.  And second, if the sentence exceeds the applicable statutory limits set forth in the United States Code, or the sentence unreasonably exceeds the guideline range determined by the Court, then he can take a direct appeal from the sentence.
>
> The reservations [sic] of the right to appeal on the basis of those specified issues, it does not include the right to raise any other issues. He waives his right to file a motion to vacate his sentence under 28 U.S.C. section 2255, attacking the conviction or sentence with the right to file any other collateral proceeding attacking the conviction or sentence.

(Docket No. 485 at 36-37).

Finally, the Court found that Petitioner was competent, that he knew and understood his right to a jury trial and the consequences of waiving that right and that he knew what the maximum penalties were. (*Id*. at 40). The Court then approved the plea agreement and accepted Petitioner's guilty plea at counts one and two of the second superseding indictment at Criminal No. 04-00299. (*Id*.).

C.     *Petitioner's Position With Regard to Sentencing Factors*

Prior to his sentencing, on December 1, 2006, Petitioner filed his Position With Regard to Sentencing Factors setting forth his objections to the Presentence Investigation Report. (Docket No. 326). In said Position, Petitioner's former counsel Chris Rand Eyster, Esquire argued that he was entitled to a 3-level reduction for acceptance of responsibility pursuant Guideline § 3E1.1(b) and advanced several arguments as to why Petitioner was entitled to downward departures from the Guideline range. (*Id*.). Pertinent here, it was also argued that Petitioner was entitled to a downward departure because of his "cooperation and Rule 11 proffer to the government [which] resulted in his wife's guilty plea reflecting her low level of culpability and saving the government the expense of prosecuting an innocent spouse." (*Id*. at ¶ 2(g)).

D.     *Sentencing Hearing*

At the sentencing hearing on December 22, 2006, argument was heard by the Honorable Thomas M. Hardiman, who rejected Petitioner's objections to the sentencing guideline range computed by the Probation Office (Adjusted Base Offense Level 32, Criminal History Category III - 151 to 188 months). (Docket No. 486 at 8-21). As set forth in his Position, counsel for Petitioner argued that Petitioner was entitled to a 3 level reduction for acceptance of responsibility, which the

Government opposed.

> MR. EYSTER: ... due to the circumstances of this case where Mr. Jackson received inadequate representation from counsel for nearly two years, it seems that the court should take this into account, the fact that Mr. Jackson cooperated by providing information to the Government which led to a fair assessment of his wife's involvement in the case and he pled guilty and saved the Government quite a bit of money and resources.

> ...

> MR. RIVETTI:  In terms of information given to the Government regarding a fair assessment of his wife's involvement, I can tell the court that the charging decisions that were made here and the ultimate plea that was reached with respect to his wife really had very little to do with anything that Mr. Jackson said to us about his wife's involvement in the drug trafficking that was going on.

> And in terms of him pleading guilty, I mean, the Government was fully prepared for trial. We had writted everyone. And the trial that, ultimately, went forward was a less involved trial, only against Doug Caplan. But we had brought our witnesses in. We interviewed our witnesses. In fact, interviewed witnesses, ultimately, we didn't call in the trial of Doug Caplan. So, he is not entitled to a third point.

(Docket No. 486 at 6-7).

Petitioner then offered a statement to the Court in which he apologized to the Court, his family and to the community for "selling drugs, and being in a conspiracy." (Docket No. 486 at 26-29).  Petitioner also thanked his counsel, Chris Eyster, Esq., and stated that "he is a fair attorney and that he is a good man.  He is on my side through having treated me very well."  (Docket No. 486 at 29).  The Court next questioned Petitioner about his counsel as follows:

> THE COURT: Thank You.  Thank you, Mr. Jackson.  Mr. Jackson are you in any way dissatisfied with the service, advice, or representation, provided to you by Mr. Eyster?

> THE DEFENDANT: No, sir.  Not at all.

11

(Docket No. 486 at 31).

Thereafter, the Court sentenced Petitioner to 188 months imprisonment at counts one and two of the superseding indictment, a sentence at the top of the Sentencing Guidelines range. (*See* Docket Nos. 329, 366, 367). In so doing, Judge Hardiman commented that the Petitioner "seems to the Court to be an intelligent person, someone who is willing to keep himself very busy, and seems to have some willingness to learn and a willingness to work." (Docket No. 486 at 41). After imposing the sentence, the Court again advised Petitioner of his appellate rights in the following manner:

> THE COURT: ... Mr. Jackson, except as you may have previously waived rights, you have the right to appeal from any order of this Court the judgment of guilt and/or the sentence imposed today. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: You have a right to have a lawyer represent you on appeal. If ... you cannot afford a lawyer, one will be appointed for you at no cost to yourself. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
> ...
>
> THE COURT: Finally, you must know that if you do wish to appeal, you must do so, that is, appeal, within ten days of today. If you do not appeal within ten days of today, you will lose your right to appeal. Do you understand that?
>
> THE DEFENDANT: Yes, sir.

(Docket No. 486 at 49-51). Petitioner did not appeal his sentence.

    E.    *Petitioner's Allegations in His Amended Motion*[3]

---

[3]

The circumstances surrounding Petitioner's election to proceed with his Amended Motion are discussed in § III *infra*.

In his Amended Motion, Petitioner alleges the following. He initially states that he did not appeal any adverse action against him because "[o]n or about December 2006 Mr. Jackson requested of his counsel Mr. Chris Rand Eyster to appeal his plea, of receiving [sic], 188 months sentencing which [sic] Mr. Jackson was only facing an [sic] sentenced of 120 months." (Docket No. 490-2 at 3). He then sets forth two ineffective assistance of counsel claims. First, he argues that his former counsel "deprived Petitioner of his right to file an [sic] direct appeal in violation of the 5th Amendment and the 6th Amendment in violation of his due process rights." (*See* Docket No. 490-2 at 4). Second, he contends that "Counsel deprived Petitioner of his right to argue his sentence under the Guideline [sic] Pursuant to the sentencing statute 3E1.1(b) where the Defendant is entitled to a 3 level reduction for acceptance of responsibility pursuant [sic] to U.S.S.G. 3E1.1(b)." (*Id*).

Attached to the Motion is a section titled "Argument" in which Petitioner explains his claims. First, he maintains that his "conviction was obtained by a plea of guilty which was unlawfully induced, not made voluntarily and without understanding the consequences of the plea" in that the plea agreement entered into between he and the Government contained a stipulation that his sentence not exceed 10 years. (*Id*. at 7). Second, he asserts that "[i]t was [Petitioner's] understanding that the agreement he entered into provided for ... a sentence of no more than 10 years. Without this consideration, [Petitioner] would have been no worse off going to trial. ... [Petitioner] only pleaded guilty with the understanding he would not receive more than 10 years pursuant to a 'specific sentence' agreement pursuant to Rule 11(e)(1)(C)." (*Id*). Third, he argues that the "probation officer ignored the Rule 11(e)(1)(C) plea agreement and the court adopted the Presentence Investigation Report (PSI), thereby sentencing [him] unlawfully to the maximum 188 months penalty, in violation of the agreement." (*Id*). Fourth, he urges this Court to find that "upon approval of the Court,

pursuant to Rule 11(a)(2) F.R.Cr.P. a defendant may enter a conditional plea of guilt preserving in writing the right to appeal any specified pretrial motions. If the defendant prevails on appeal, he is allowed to withdraw the conditional plea," and that his counsel was ineffective for failing to preserve his right to appeal the three level reduction for acceptance of responsibility under Guideline § 3E1.1(b). (*Id*. at 14).

Petitioner later sets out in an "Affidavit" that his former counsel should have filed a notice of appeal regarding the grounds argued in the Position With Regard to Sentencing Factors, which he also attaches to his Motion. (*Id*. at 24). Finally, Petitioner requests that the Court provide him with a transcript from his sentencing proceeding, explaining that when he "was sentenced on December 22, 2006, former defense counsel, Chris Rand Eyster, Esquire advised [Petitioner] not to appeal his sentence and plead" and that "only recently has it came [sic] to [his] attention that he does have viable claims for direct appeal."[4] (Docket No. 490-2 at 24).

III. PROCEDURAL HISTORY[5]

Petitioner filed the pending *pro se* motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on November 9, 2007, alleging that he was denied his right to appeal the sentence imposed because of the alleged ineffectiveness of his counsel. (Docket No. 459). Subsequently, on that same date, the Court entered an Order pursuant to *United States v. Miller*, 197 F.3d 644, 649 (3d Cir. 1999), advising Petitioner of his right to either: (1) proceed with his petition under § 2255 solely

---

[4]

The Court notes that counsel has been appointed to represent Petitioner in proceedings related to the pending motion and Petitioner has had access to the transcript of his change of plea and sentencing hearings through his appointed counsel. *See* § III *infra*.

[5]

This matter was reassigned to the undersigned Judge on April 6, 2007.

on the grounds of the ineffectiveness of his counsel in failing to file an appeal from his sentence; or (2) withdraw his petition and to re-file one all-inclusive § 2255 habeas petition (including any additional grounds) within the one year limitations period of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, effective date April 24, 1996. (Docket No. 460). Said Court Order also advised Petitioner that any successive § 2255 habeas petitions will be dismissed unless the United States Court of Appeals for the Third Circuit certifies that certain very specific and rare circumstances exist. (Docket No. 460). Petitioner did not file any response to this Order with the Clerk of Court. Thereafter, the Court issued a briefing schedule with respect to the motion to vacate (Docket No. 461) on the singular issue of whether Petitioner was denied effective assistance of counsel for failing to file an appeal.

After an extension of time was granted by the Court, the Government filed its Opposition to Defendant Vernon Jackson's Motion to Vacate Under 28 U.S.C. § 2255 on February 4, 2008. (Docket No. 474). Petitioner then filed a "Motion Pursuant to Rule 45(a)(1) Failure by Prosecutor to File a Timely Response to Petitioner 28 USC Sect 2255" (Docket No. 475) which was denied by the Court as the Government's brief was timely filed pursuant to an extension. (Docket No. 476). On February 19, 2008, the Court ordered that an evidentiary hearing be held on April 16, 2008 to resolve certain factual allegations made by Petitioner in his motion (Docket No. 479) and appointed Counsel to represent Petitioner at such hearing. (Docket No. 478). Petitioner, through counsel, filed a "Brief in Support of Motion to Vacate, Set Aside, Or Correct Sentence Pursuant to Title 28, U.S.C. Section 2255" on March 28, 2008. (Docket No. 482).

Petitioner then filed a Motion to Continue the hearing date, which was granted by the Court. (*See* Docket Nos. 488 & 489). The hearing was rescheduled to occur on April 25, 2008. Prior to

the hearing, the Court was informed by counsel that Petitioner had attempted to file an Amended Motion to Vacate (hereinafter "Amended Motion") in response to the Court's November 9, 2007 Order. (*See* Docket No. 490). Petitioner sent his Amended Motion, dated November 19, 2007, directly to the United States Attorney's office, and not to the United States Clerk of Court. (*See* Docket No. 490-2). A copy of the Amended Motion was provided to the Court by that office by hand delivery on April 17, 2008. At the motion hearing on April 25, 2008, after conferring with his counsel, Petitioner asserted to the Court under oath that he wished to proceed with his Amended Motion. (Docket No. 490).

Given Petitioner's election to proceed with his Amended Motion, the Court entertained oral argument from counsel regarding whether Petitioner was entitled to an evidentiary hearing on his claims set forth in said Motion. (*Id.*). In addition, the Court ordered that counsel brief the issues raised at the hearing, which was continued to July 3, 2008. (Docket No. 491). Pursuant to this Court Order, the Government filed its Response in Opposition to Defendant Vernon Jackson's Amended Motion to Vacate on May 27, 2008, arguing that Petitioner was not entitled to the relief requested or an evidentiary hearing regarding the same.[6] (Docket No. 494). Petitioner, through counsel, then filed a Reply to Government's Opposition on June 26, 2008 in which he asserted that he was entitled to an evidentiary hearing. (Docket No. 498). As the Government contested whether an evidentiary hearing was warranted, the Court issued an Order on June 30, 2008 continuing the July 3, 2008 hearing generally until it could resolve the issue of the necessity of a hearing. (Docket No. 499).

In the interim, the United States Court of Appeals for the Third Circuit issued the decision

[6] In addition, the Government did not object to Petitioner's "request to proceed with the claims advanced in his Amended Section 2255 motion." (Docket No. 494 at 6).

of *United States v. Mabry*, 536 F.3d 231 (3d Cir. 2008), which the Court believes has an impact on the resolution of Petitioner's motion.  As a result, the Court ordered that the parties file supplemental briefs as to the applicability of *Mabry* to the facts of the instant matter.  (Docket No. 504).  Petitioner filed his Supplemental Brief on August 25, 2008.  (Docket No. 505).  Thereafter, the Government filed its Supplemental Brief on September 17, 2008.  (Docket No. 506). Petitioner's Motion is now ripe for disposition.

IV.    LEGAL STANDARD

Petitioner filed the instant motion challenging his sentence under 28 U.S.C. § 2255(a), which provides that:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C.A. § 2255.  "Thus Petitioner is entitled to relief only if he can demonstrate that he is in custody in violation of federal law or the Constitution."  *Hernandez v. United States*, Civ. A. No. 07-752, 2008 WL 3843510, at *2 (D.N.J. Aug. 14, 2008).

Generally, a district court must order an evidentiary hearing in a federal habeas case if a prisoner's § 2255 allegations raise an issue of material fact.  *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir. 1992).  But, if there is "no legally cognizable claim or the factual matters raised by the motion may be susceptible of resolution through the district judge's review of the motion and records in the case," the motion may be decided without a hearing.  *United States v. Costanzo*, 625 F.2d 465,

470 (3d Cir. 1980). If a hearing is not held, the district judge must accept the movant's allegations as true "unless they are clearly frivolous on the basis of the existing record." *Gov't. of Virgin Islands v. Bradshaw*, 726 F.2d 115, 117 (3d Cir. 1984).

In order for a district court to correct a petitioner's sentence pursuant to his § 2255 Motion to Vacate, it must find "that . . . judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the [petitioner] as to render the judgment vulnerable to collateral attack." *Garcia v. United States*, Criminal Action No. 93-536-03, Civil Action No. 97-2861, 2008 U.S. Dist. LEXIS 29298, at *4 (D.N.J. Apr. 9, 2008) (internal quotation and citation omitted). A petitioner bears the burden of establishing his entitlement to § 2255 relief. *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a petitioner's § 2255 Motion to Vacate is a collateral attack on his sentence, he "must clear a significantly higher hurdle than would exist on direct appeal" to obtain relief. *See United States v. Bohn*, Criminal Action No. 92-61-02, 1999 U.S. Dist. LEXIS 18522, at *7 (E.D. Pa. Nov. 9, 1999) (quoting *United States v. Frady*, 456 U.S. 152, 166 (1982)).

V.    DISCUSSION

     A.    *Effectiveness of Petitioner's Waiver of the Right to File a Motion under 28 U.S.C. § 2255.*

Petitioner has filed a motion to vacate his sentence under 28 U.S.C. § 2255 asserting that his counsel was ineffective for failing to file an appeal of his sentence despite his explicit request to do so. (Docket Nos. 495, 490-2). In its Supplemental Brief, the Government argues that Petitioner "knowingly and voluntarily waived his direct appeal and collateral attack rights" pursuant to his plea

agreement with the Government, including his right to file the pending motion to vacate. (Docket No. 506). The Government maintains that this collateral attack waiver should be enforced, relying on the decision of the United States Court of Appeals for the Third Circuit in *United States v. Mabry.* It also contends that Petitioner's motion should be denied without an evidentiary hearing. (Docket No. 506 at 16). Petitioner counters that the collateral attack and appellate waivers in this case should not be enforced as they were not knowingly and voluntarily entered into and that enforcement of the waivers would result in a miscarriage of justice. (Docket No. 505).

In *United States v. Mabry*, the United States Court of Appeals for the Third Circuit discussed the applicability of appellate and collateral attack waivers in the context of an ineffective assistance of counsel claim for failure of counsel to file a requested appeal. In so doing, the Court of Appeals held that:

> [t]he analysis employed in evaluating an ineffectiveness of counsel claim does not apply when there is an appellate waiver. While a defendant may be entitled to habeas relief if his attorney ineffectively fails to file a requested appeal because it is presumed to be prejudicial under *Flores-Ortega*, if that same defendant has effectively waived his right to habeas, he cannot even bring such a claim unless the waiver fails to pass muster under an entirely different test: one that examines its knowing and voluntary nature and asks whether its enforcement would work a miscarriage of justice.

*Mabry*, 536 F.3d at 241. Thus, if this Court determines that Petitioner effectively waived his right to file a motion to vacate under 28 U.S.C. § 2255, he is jurisdictionally barred from pursuing his claim. In making such determination, this Court must determine the validity of the waiver by "specifically examining the (1) knowing and voluntary nature, based on what occurred and what defendant contends, and (2) whether enforcement would work a miscarriage of justice." *Id*. at 237. A defendant has the initial "burden of presenting an argument that would render his waiver

unknowing or involuntary" but the district court "has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Id*. at 237-238 (citing *Khattak*, 273 F.3d at 563).

In this matter, Petitioner pled guilty pursuant to a plea agreement which contained clear appellate and collateral attack waivers. (*See* Docket No. 305). The Government seeks enforcement of the collateral attack waiver. (Docket No. 506). Petitioner, however, contends that the plea colloquy conducted by the Court in this matter was insufficient in several respects, thus preventing enforcement of the waivers. (Docket No. 505). Petitioner sets forth the following three arguments as to why the waivers in this case were not knowing and voluntary: (1) that the Court did not specifically address and/or question Petitioner regarding the appellate and collateral attack waivers or his understanding of the same; (2) that the Court did not exercise special care in administering the plea to Petitioner as his plea "appears to have been inextricably tied to the extremely favorable plea agreement negotiated on behalf of [Petitioner's] wife" who was also a co-defendant; and, (3) that the waivers were premised on a misunderstanding of the Guidelines calculation articulated by the Assistant United States Attorney at the change of plea hearing. (*Id*.). Accordingly, in light of the arguments set forth by Petitioner, the Court must analyze the record before it to determine whether: (1) the waivers were knowing and voluntary; and, (2) the enforcement of the waiver would result in a miscarriage of justice.

1.      Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure

Petitioner first argues that his assent to the collateral attack and appellate waivers was not knowing and voluntary as the Court did not specifically question him regarding the collateral attack

and appellate waivers during the plea colloquy as required by Rule 11(b)(1)(N) of the Federal Rules of Criminal Procedure. (Docket No. 505 at 4-5). The Government maintains that the totality of the circumstances surrounding Petitioner's plea demonstrate that he clearly agreed to be bound to the plea agreement including the appellate and collateral attack waivers and, thus, he "knowingly and voluntarily waived his direct appeal and collateral attack rights." (Docket No. 506 at 13-14).

Rule 11(b)(1)(N) provides that "[b]efore the court accepts a plea of guilty ... the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands ... the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." FED.R.CRIM.P. 11(b)(1)(N). "A defendant claiming that a waiver should be unenforceable due to an inadequate plea hearing colloquy has the burden of satisfying the plain error standard." *Scales v. United States*, Crim. No. 03-257, 2008 WL 5114267, at *13 (W.D.Pa. Nov. 25, 2008)(slip copy)(citing *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir.2008)). That standard, as articulated by the United States Court of Appeals for the Third Circuit in *Goodson*, requires Petitioner to prove "(1) error, (2) that is plain and obvious, and (3) that affects a defendant's substantial rights." *Goodson*, 544 F.3d at 539 (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997); *United States v. Olano*, 507 U.S. 725, 732 (1993)); *See also* FED.R.CRIM.P. 11(h) ("A variance from the requirements of [Rule 11] is harmless error if it does not affect substantial rights.").

In *Goodson*, the Court of Appeals found that it was plain and obvious error for the district court to rely on "the prosecutor's recitation of the terms of the appellate waiver to fulfill its obligation to inform the defendant of the specifics of the waiver provision" in light of the

requirements of Rule 11(b)(1)(N). *Goodson*, 544 F.3d at 540. Here, the Court accepted Petitioner's

plea of guilty without the benefit of the Court of Appeals decision in *Goodson*, which was issued

subsequent to change of plea hearing in this matter. Accordingly, the Court did not question

Petitioner directly regarding the appellate and collateral attack waivers in the plea agreement, but,

as did the district court in *Goodson*, relied on the prosecutor to recite the terms and conditions of the

plea agreement in open court. (*See* Docket No. 485 at 36-39). Therefore, under *Goodson*, the failure

to directly question Petitioner as to collateral attack and appellate waivers in the plea agreement

under Rule 11(b)(1)(N) is plain and obvious error.[7] *See Scales*, 2008 WL 5114267, at *14 (applying

---

[7]     The Court notes that this is an interesting result in light of the United States Court of Appeals
for the Third Circuit's holding in *United States v. Jackson*, 523 F.3d 234 (3d Cir. 2008) in which the
Court of Appeals found that a valid appellate waiver existed in a plea agreement between the
defendant there, Jacqulyn Jackson (Petitioner's co-defendant and wife) and, as a result, declined to
assert jurisdiction over her appeal. Having reviewed the colloquy of the change of plea in that
proceeding, the Court finds that an identical procedure was used by the district court in Petitioner's
case (except that Ms. Jackson pled guilty to an information and not an indictment) and that the
waivers contained in both plea agreements were identical. In so doing, the court questioned Ms.
Jackson generally about the nature of her understanding of the plea agreement, but relied on the
prosecutor to list the specifics of the appellate and collateral attack waivers on the record. The
change of plea in Ms. Jackson's case took place literally 30 minutes before Petitioner's, and involved
the same judge and prosecutor. (*See* Criminal No. 06-327, Docket No. 18 (indicating that the
Hearing on Waiver and Change of Plea in that matter commenced on Tuesday, September 26, 2006
at 10:00 a.m.)).

       In addition, the Court of Appeals in *Goodson* relied on its earlier decision in *Jackson* for the
general elements to be considered when discussing appellate waivers. The Court of Appeals held:

> In *United States v. Jackson*, 523 F.3d 234 (3d Cir.2008), we
> considered whether a defendant's waiver of her right to appeal
> prohibited her from challenging the reasonableness of her sentence.
> There, we enumerated three elements to be considered when the
> government invokes an appellate waiver and the defendant contends
> that the waiver does not bar her appeal: (1) whether the waiver 'of the
> right to appeal her sentence was knowing and voluntary;' (2) 'whether
> one of the specific exceptions set forth in the agreement prevents the

*Goodson* and finding that the district court committed plain error for not directly questioning the defendant as to the collateral attack and appellate waivers in his plea agreement).

Although the Court finds that plain error existed here, Petitioner still has the burden to demonstrate "that the deficient colloquy affected his substantial rights by precluding him from knowing of and understanding the significance of the binding appellate waiver in the plea agreement." *Goodson*, 544 F.3d at 540-541. In *Goodson*, the Court of Appeals consulted the "whole record" to determine if the defendant's substantial rights were affected. *Id*. at 541. While not expressly delineating the factors that it considered in its decision, the Court of Appeals examined the following: (1) the characteristics of the defendant; (2) the nature and circumstances of the crimes committed; (3) the terms of the plea agreement itself; (4) the execution of the agreement which contained a clause that he read and understood the plea agreement which contained the waiver; (5) the defendant's assertions during the plea hearing that he had read, understood and conferred with his counsel regarding the terms of the plea agreement; and (6) that the prosecutor had generally reviewed the terms of the appellate waiver. *Id*.; *see also Scales*, 2008 WL 5114267, at *14 (following *Goodson* and applying similar factors to determine if the deficient colloquy affected the defendant's substantial rights).

> enforcement of the waiver;' i.e., what is the scope of the waiver and does it bar appellate review of the issue pressed by the defendant; and (3) 'whether enforcing the waiver would work a miscarriage of justice.'

*Goodson*, 544 F.3d 529, 536 (3d Cir. 2008)(quoting *Jackson*, 523 at 243-244). In its decision, the Court of Appeals acknowledged that Ms. Jackson's appeal challenged only the reasonableness of her sentence, *see Jackson*, 523 at 236, and thus, she did not raise the issue of whether a Rule 11(b)(1)(N) violation occurred during the waiver and plea hearing which invalidated the waivers in her plea agreement. Nevertheless, this Court is bound by the decision in *Goodson* and will apply it here.

Applying those factors here, the Court notes the following. At the time of his guilty plea Petitioner was thirty-eight years old, high school educated, and asserted that he could read, write and understand the English language. (Docket No. 485 at 5-6). Petitioner's crimes were complex. In fact, he admitted that he was involved in an extensive drug conspiracy to traffic heroin from New York and New Jersey to Pittsburgh as well as launder the proceeds from this trafficking by purchasing two nightclubs in the Station Square complex of Pittsburgh, PA. (*Id*. at 13-34). In addition, he and his co-defendant used a straw purchaser to acquire a loan used to purchase the night clubs. (*Id*.).

Secondly, the collateral attack and appellate waivers are clearly set forth in the written plea agreement which Petitioner asserted that he understood both under oath and by executing the agreement. (Docket No. 305 at 6; Docket No. 485 at 14). The prosecutor also reviewed the terms of the plea agreement, including the specific waiver provisions and exceptions thereto in open court before the Petitioner. (Docket No. 485 at 36-37).

Finally, there is nothing in the record to indicate that Petitioner's assent to the plea agreement which contained the collateral attack waiver was involuntary. Rather, Petitioner acknowledged the agreement while under oath and the Court approved the plea agreement and accepted his guilty plea. (*Id*. at 40). Accordingly, the Court finds that the plain error by the Court in conducting his Rule 11 colloquy does not render the appellate and collateral attack waivers unenforceable as Petitioner's plea was voluntary and knowing. *See Mabry*, 536 F.3d at 237.

2.     Package Deal Plea Agreement

Petitioner next asserts that the appellate and collateral attack waivers were not voluntarily and knowingly entered into because the district court "failed to exercise special care in accepting

24

[Petitioner's] plea pursuant to the plea agreement despite the fact that [Petitioner's] guilty plea appears to have been inextricably tied to the extremely favorable plea agreement negotiated on behalf of [Petitioner's] wife." (Docket No. 505 at 7). The Government argues that the Court should not consider Petitioner's argument that his plea was the result of a "package plea deal" including his wife as it was not raised in his Amended Motion and, if considered, that his contention is not supported by the record. (Docket No. 506 at 10 n. 3).

The Court rejects the Government's assertion that it cannot consider Petitioner's argument because he failed to raise the issue in his Amended Motion. Like the defendant in *Mabry*, Petitioner "cannot be faulted for failing to raise an issue that is neither a basis for habeas relief nor related to his ineffectiveness claim. The fact that he had waived his right to proceed with collateral review [is] a defense to his habeas claim raised by the government." *Mabry*, 536 F.3d at 237 n. 5. Accordingly, as Petitioner's argument is raised in the context of whether he knowingly and voluntarily entered into the collateral attack and appellate waivers, it is properly before the Court at this time. However, based on the following, the Court agrees with the Government that the record does not demonstrate that Petitioner's plea was a part of a joint plea agreement or that there was error on the part of the Court in failing to exercise special care in accepting Petitioner's plea.

As in Petitioner's challenge to the court's plea colloquy under Rule 11(b)(1)(N) discussed above, the plain error standard is applied to his challenge that the plea colloquy was deficient for failure to take special care because his plea was allegedly the result of a joint plea agreement. *United States v. Hodge*, 412 F.3d 479, 488 (3d Cir. 2005). In *Hodge*, the United States Court of Appeals for the Third Circuit held that "[t]here is no question that package deal plea bargains are constitutional," but it is necessary that "(1) package plea deals be disclosed to the court and (2)

colloquies with package plea participants be conducted with special care." *Hodge*, 412 F.3d at

489-490 (citations omitted). With respect to the first element, the "parties must notify the district

court that a package deal exists and state to the court on the record the specific terms of that deal."

*Id.*. at 491 (citing FED. R. CRIM. P. 11(c)(2) ("The parties must disclose the plea agreement in open

court ...."); *United States v. Hernandez*, 79 F.3d 1193, 1194 (D.C. Cir. 1996)(citing *United States

v. Roberts*, 570 F.2d 999, 1007 n. 25 (D.C.Cir.1977))). Regarding the second element, the Court of

Appeals explained:

> [w]hat then in general terms is "special care"? At the threshold, a
> district court notified of a package deal plea bargain should question
> counsel closely to ensure that the precise terms of the package plea
> deal are on the record. Once it is clear exactly how a defendant's plea
> benefits his confederate(s), it may be helpful to ask who first
> proposed the package deal, how extensively defense counsel was
> involved in developing the deal, and what benefit the defendant
> expects to gain from the deal. When asking whether a plea is a
> product of force, threats, or inducements and the like, a district court
> should take care not to ask only whether the prosecutor forced,
> threatened, or coerced the defendant, but whether anyone did so.
> Having so inquired, the court should be particularly attuned to even
> mild expressions of reluctance by a defendant. Such expressions
> always should trigger a more searching inquiry. On the other hand, as
> none of the defendants may be particularly eager to plead guilty, one
> defendant's expressions of reluctance should be compared to those of
> other defendants involved in the package deal.

*Id*. at 491-492 (internal citations omitted). "The overarching rule is that a district court considering

a package plea deal should be particularly attentive to a defendant's responses to voluntariness

questions throughout a plea colloquy." *United States v. Hall*, 515 F.3d 186, 195 (3d Cir.

2008)(quoting *Hodge*, 412 F.3d at 491). Further, "package deal plea bargains are not inherently

coercive, and [ ] the judge's goal is not to doom the deal but simply to ensure that the defendant's

plea is voluntary." *Id*.

Petitioner's argument here, through counsel, is that the "special care" contemplated by the Court of Appeals in *Hodge* must be undertaken by the court if it "appears" that a package plea deal exists. (Docket No. 505 at 7; Docket No. 498 at ¶¶ 8-9). Petitioner does not maintain that a package deal in fact existed or that both Petitioner and his wife pled guilty pursuant to any joint agreement. Instead, Petitioner points to the evidence of record that shows that a joint agreement involving him and his wife was at one time discussed and that his wife pled guilty immediately prior to him. He further points to argument of Petitioner's former counsel, Mr. Eyster, who had argued for a reduced sentence for Petitioner based on information provided to the Government regarding his wife which allegedly enabled the Government to strike a plea deal with her on reduced charges. (*See* Docket No. 329, *Defendant's Position With Regard to Sentencing Factors* ("the Defendant's cooperation and Rule 11 proffer to the government resulted in his wife's guilty plea reflecting her low level of culpability and saving the government the expense of prosecuting an innocent spouse.")); (*see also* Docket No. 486, *Sent. Hr'g Trans. 12/22/06* at 6, 12 ("Mr. Eyster: ... It seems that the court should take this into account, the fact that Mr. Jackson cooperated by providing information to the government which led to a fair assessment of his wife's involvement in the case and he pled guilty and saved the government quite a bit of money and resources."); (Mr. Eyster: ... Mr. Jackson did provide information to the government, which, I guess, coincidently, caused the government to change its position relative to Jackie Jackson. We believe that this is significant, when an individual comes forth, provides exculpatory information relative to an alleged co-conspirator, and then the charges are changed. You know, usually, when, when a defendant provides exculpatory information, they get credit for such information.")).

Upon this Court's review, the record evidence demonstrates that Petitioner's plea was not

procured as part of a joint plea agreement.[8]  Petitioner's plea agreement does not reference his wife

or any other co-defendant.  (*See* Docket No. 305).  Specifically, the agreement provides the

following: (1) that it contains the "full and complete terms and conditions of the agreement" between

Petitioner and the Government; (2) that Petitioner "acknowledge[s] that [the plea letter] fully sets

forth [his] agreement" with the Government; and, (3) that Petitioner affirms that there "have been

no additional promises or representations made to [him] by any agents or officials of the United

States in connection with this matter."  (*Id.*).  At the change of plea hearing, the Court specifically

requested that any plea agreement be disclosed and the parties disclosed the agreement discussed

herein.  Petitioner also answered in the negative when questioned by the court as to whether: "[o]ther

than what is stated in [the] plea agreement, has anyone made any prediction or promise to you as to

what your sentence will be?" and "[h]as anyone offered you or promised you anything in order to

get you to enter a plea to the charges, other than what is set forth in the plea agreement." (Docket No.

485 at 17, 35).[9]  The argument of counsel at Petitioner's sentencing also demonstrates that his former

[8]

Petitioner appears to admit the same.  (*see* Docket No. 498 at ¶ 8 ("no formal mention was made of a joint plea agreement at the time of the Defendant's guilty plea on September 26, 2006")).

[9]

The Court also takes judicial notice of Jacqulyn Jackson's plea agreement with the Government (Criminal No. 06-327, Docket No. 7).  *See* FED.R.EVID. 201(b)(2)("A judicially noticed fact must be one not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").  That agreement provides, in part, that "[a]fter the entry of Jacqulyn Jackson's guilty plea to the Information at Criminal No. 06-327, the United States Attorney will move to dismiss the Second Superseding Indictment as to defendant Jacqulyn Jackson at Criminal No. 04-299." (*Id.* at (B)(1)). It also states that "[t]his letter sets forth the full and complete terms and conditions of the agreement between Jacqulyn Jackson and the United States Attorney for the Western District of Pennsylvania, and there are no other agreements, promises, terms or conditions, express or implied."  *Id.*  Finally, the final page is signed by Jacqulyn Jackson on 9/26/08, witnessed by her counsel, James J. Brink, Esquire, and provides that "I have received this letter from attorney, James J. Brink, Esquire, have read it and discussed it with him, and I hereby accept it and acknowledge that it fully sets forth my

counsel did not believe that a joint plea agreement existed but only that Petitioner's plea and corresponding cooperation later enabled the Government to enter into a plea agreement with Jacqulyn Jackson. (Docket No. 486 at 6, 12). In addition, Petitioner has not proffered any evidence in support of this claim that would refute the evidence of record.

In this Court's estimation, if a criminal defendant's plea is not part of a package plea deal, then disclosure is not required and the court need not specifically question the defendant in the manner described in *Hodge*. As no joint plea agreement exists here, Petitioner has not met his burden to demonstrate that the appellate and collateral attack waivers were not voluntary or knowing. The ultimate inquiry of a district court in accepting a guilty plea, regardless of *Hodge*, is to determine the voluntariness of a defendant's plea. The Court in this instance appropriately questioned Petitioner and made a determination at the plea hearing that his plea was voluntary. Accordingly, Petitioner has not met his burden to establish that any alleged package deal plea agreement invalidated the collateral attack and appellate waivers contained in his plea agreement with the Government.

### 3.    Miscalculation of the Applicable Guideline Range

Lastly, Petitioner asserts that the collateral attack and appellate "waivers were premised on the understanding of his likely Guideline range; as these projections were incorrect, his waivers simply were not knowingly and intelligently made." (Docket No. 505 at 8). His argument is general in nature as he does not cite any factually analogous decision in support of this contention. (*Id*.).

---

agreement with the Office of the United States Attorney for the Western District of Pennsylvania. I affirm that there have been no additional promises or representations made to me by any agents or officials of the United States in connection with this matter." *Id*.

The Government counters that the record evidence clearly demonstrates that Petitioner pled "guilty knowing that his Sentencing Guideline range was uncertain." (Docket No. 506 at 8)(emphasis in original).

The Guideline projections set forth by the Government and Petitioner's counsel at the plea hearing were in fact incorrect. At the plea hearing, the Government projected that the applicable Guideline range was 108-135 months[10] based on an offense level of 30 and criminal history category of II except that Petitioner was subject to a mandatory minimum sentence of ten years (120 months).[11] (Docket No. 485 at 12-13). Petitioner's counsel generally agreed with this projection, except that he argued that Petitioner was entitled to an additional 1 point reduction of the offense level for acceptance of responsibility pursuant to Guideline section 3E1.1(b). (*Id.* at 13). Both projections were below that computed by the Court at Petitioner's sentencing, when the Court found that Petitioner's "adjusted base offense level [was] 32, with a criminal history category of III, which call[ed] for an adjusted guideline range of one hundred fifty-one to one hundred eighty-eight months." (Docket No. 486 at 10).

While the Guideline projections were miscalculated, the Court does not find that such

[10]

The Court notes that at the time of Defendant's sentencing on December 22, 2006, the applicable version of the Guidelines Manual was the version effective November 1, 2006. *See* U.S. Sentencing Guideline § 1B1.11(a) ("The Court shall use the Guidelines Manual in effect on the date that the defendant is sentenced").

[11]

Prior to making his projection, the Assistant United States Attorney qualified his statements to the Court. (*See* Docket No. 485 at 12 ("Mr. Rivetti: Your Honor, *I have not done a detailed Guideline analysis*, but I can inform the court that, in large part, the Guideline calculation will be driven by the stipulation and the proposed plea letter regarding the drug quantity ... His criminal history is not extensive, and I don't have certified copies of what's set forth on his rap sheet, but *my best guess* is a criminal history category II.")(emphasis added)).

miscalculation renders Petitioner's plea (or the appellate and collateral attack waivers) involuntary or unknowing. The Guidelines range presented by counsel for the Government at the change of plea hearing was an estimate and the Assistant United States Attorney stated the same on the record. Petitioner, a high school graduate was present and presumably heard what was said. In addition, the Court properly informed Petitioner and he asserted that he understood that a precise Guidelines calculation could not be determined until after the Court considered the Presentence Report and that he could be sentenced up to the maximum penalty of life imprisonment. *See e.g., United States v. Adkins*, Criminal No. 05-CR-443-16, 2007 WL 184887, at *3 (M.D.Pa. Jan. 19,2007)(not reported)(denying defendant's motion to withdraw a guilty plea due to the discrepancy between "her anticipated sentence of 36-42 months and the recommended guideline range of 168-210 months set forth in the presentence report"); *United States v. Mustafa*, 238 F.3d 485, 492 (3d Cir.2001) (in context of an ineffectiveness of counsel claim, the Court of Appeals held that "any alleged misrepresentations that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when [defendant] was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum."); *Scales*, 2008 WL 5114267at *21 (citing *United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir.2007)*; Masciola v. United States*, 469 F.2d 1057, 1059 (3d Cir.1972))("Counsel's inaccurate prediction of a sentence that a defendant may receive does not amount to ineffective assistance, if during the plea colloquy the court informs the defendant of his maximum potential sentence, and the defendant acknowledges that maximum sentence.").

Prior to the Government's assertion of the applicable guideline range, the Court also questioned Petitioner in the following manner:

THE COURT: Do you understand that the court will not be able to determine the Guideline range for your case until after the Presentence Report has been completed and you and the Government have had an opportunity to challenge the reported facts and the application of the Guidelines recommended by the probation office? And, further, that the sentence imposed may be different from any estimate that your attorney may have given you?

THE DEFENDANT: Yes, Sir.

...

THE COURT: ...  Mr. Jackson, do you understand that after it has been determined what guideline range of sentence applies to a case, the judge has the authority to depart from that guideline range and impose a sentence that is more severe, that is, longer, or less severe, that is, shorter, than that called for by the guidelines, as long as the sentence imposed is within the statutory range and is reasonable.

THE DEFENDANT: Yes, Sir.

...

THE COURT: ... Do you understand that any recommendation of sentence agreed to by your counsel and the prosecution or any agreement not to oppose your attorney's requested sentence, is not binding on the court, and that you could, on the basis of your guilty plea, receive up to the maximum permitted by Law?

THE DEFENDANT: Yes, Sir.

THE COURT: Do you understand that if I decline to impose the sentence recommended by the prosecutor and your counsel and impose a more severe sentence, you will not, therefore, be entitled to withdraw your guilty plea?

THE DEFENDANT: Yes, Sir.
...
THE COURT: Other than what is stated in plea agreement, has anyone made any prediction or promise to you as to what your sentence will be?

THE DEFENDANT: No, Sir.

THE COURT: Have you been instructed by your counsel, Government counsel, or anyone else, to respond untruthfully to any question concerning a promised sentence?

THE DEFENDANT: Say that -- could you repeat that?

THE COURT: Certainly. Have you been instructed by your counsel, by Government counsel, or anyone else, to respond untruthfully to any question concerning a promised sentence?

THE DEFENDANT: No, Sir.

(Docket No. 485 at 13, 15, and 17).

Accordingly, as the record demonstrates that Petitioner pled guilty voluntarily and fully knowing that a precise Guidelines calculation could not be computed until after the completion of the Presentence Report and that he could receive any sentence up to the maximum, Petitioner has failed to meet his burden to demonstrate that the collateral attack and appellate waivers were not effective.

4.    Miscarriage of Justice

While the Court has determined that the collateral attack and appellate waivers were made knowingly and voluntarily by Petitioner, the Court also has an affirmative duty to consider "whether enforcement would work a miscarriage of justice." *Mabry*, 536 F.3d at 237-238. In so doing, the Court must apply "a common sense approach in determining whether a miscarriage of justice would occur if the waiver were enforced," and consider "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" *Id*. at 242-43 (citations omitted). In *Mabry*, the

Court of Appeals cited specific examples of instances that may constitute a miscarriage of justice including if enforcing a collateral attack waiver would bar a defendant's appeal on grounds expressly preserved in the plea agreement or if counsel was ineffective in negotiating the very plea agreement which contained the waiver. *Id*. at 243 (citing *Shedrick*, 493 F.3d at 303; *United States v. Wilson*, 429 F.3d 455 (3d Cir.2005)).

Petitioner here has alleged in his Amended Motion that his counsel failed to file an appeal on his behalf, despite his request for him to do so. (Docket No. 490-2 at 3). Petitioner's Amended Motion alleges that his counsel was ineffective in violation of his Sixth Amendment rights for not filing an appeal on any of the following grounds:

> (1) that he was entitled to a 3 level reduction for acceptance of responsibility under U.S.S.G. 3E1.1(b);
>
> (2) that his guilty plea was involuntary as it was made "without understanding the consequences of the plea" because he "only pleaded guilty with the understanding he would not receive more than 10 years pursuant to a 'specific sentence' agreement pursuant to Rule 11(e)(1)(C)" and that his sentence of 188 months was in violation of this agreement; and
>
> (3) the other issues that were raised in Defendant's Position With Regard to Sentencing Factors.

(Docket No. 490-2 at 4, 7 & 9; Docket No. 493 at 10-12; Docket No. 494 at 7-8). Petitioner later asserts in an affidavit that when he "was sentenced on December 22, 2006, former defense counsel, Chris Rand Eyster, Esquire advised [Petitioner] not to appeal his sentence and plead." (Docket No. 490-2 at 24).

The waivers agreed to by Petitioner in this case were broad and encompassed any challenge to his sentence or conviction subject to limited exceptions, i.e., if the United States appealed the

sentence or conviction, if his sentence exceeded the statutory limits set forth in the United States Code or "if the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines." (Docket No. 305). None of the exceptions to the plea agreement are applicable here as Petitioner's sentence of 188 months was within the applicable Guideline range (151-188 months), beneath the statutory maximum of life imprisonment and his sentence was not appealed by the United States. Further, like the defendant in *Mabry*, Petitioner has "not identified any nonfrivolous ground, not covered by the waiver, for a direct appeal or collateral attack" in his Amended Motion.[12] *Mabry*, 536 at 243. Therefore, "enforcing the waiver is in line with justice, not a miscarriage of it," and the Court will not exercise jurisdiction over Petitioner's claims as he knowingly and voluntarily waived his right to file this motion and enforcing the plea agreement would not result in a miscarriage of justice. *Id*. at 244. Accordingly, Petitioner's Motion [459], as amended (Docket No. 490-2), is denied.

B. *Petitioner's Ineffective Assistance of Counsel Claim*

Although the Court has found that Petitioner's Motion is barred by the collateral attack waiver in his plea agreement with the Government, the Court addresses the merits of his argument, based on ineffective assistance of counsel. Petitioner claims that his counsel was ineffective due to his alleged failure to follow his explicit direction to file a notice of appeal on his behalf and that such

---

[12]

In fact, Petitioner's appointed counsel representing him in this matter has conceded that Petitioner's claim that his plea agreement contained a stipulated sentence of ten years is not supported by the record. (*See* Docket No. 498 at ¶ 31. ("Upon a review of the [Petitioner's] plea agreement, it is clearly not arguable that the plea agreement called for a specific sentence pursuant to Rule 11 of the Federal Rules of Criminal Procedure.")). A review of the plea agreement demonstrates that a specific sentence of 10 years was not stipulated to by the parties. (*See* Docket No. 305).

failure was violative of his rights as secured by the Sixth Amendment to the United States Constitution. (Docket No. 490-2). Petitioner admits, however, that his former counsel advised him at his sentencing not to appeal the sentence. (*Id*. at 24). The legal standard applicable to the Petitioner's ineffective assistance of counsel claims was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that:

> [a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. In a later decision, *Roe v. Flores-Ortega*, the Supreme Court explained that *Strickland* required that "[a] defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores-Ortega*, 528 U.S. 470, 476-477 (2000) (citing *Strickland*, 466 U.S. at 688, 694).

The Supreme Court in *Flores-Ortega* discussed the applicability of the *Strickland* standard to claims by a convicted defendant that his counsel was ineffective during an appeal from his sentence. Three categories of such claims were discussed by the Court: (1) explicit requests by the defendant to counsel to file an appeal on his behalf; (2) explicit statements by the defendant to counsel not to file an appeal; and (3) situations in which the defendant does not convey to counsel

36

if he wishes to have an appeal filed on his behalf or not. *Flores-Ortega*, 528 U.S. at 477.

As stated, Petitioner argues that he was denied rights secured by the Sixth Amendment of the United States Constitution because of the alleged ineffectiveness of his counsel in not filing a direct appeal from his sentence, despite Petitioner's request that such an appeal be filed. Petitioner must therefore prove that his "counsel's representation fell below an objective standard of reasonableness" and that he was prejudiced as a result. *Id.* at 476-477. With regard to the objective reasonableness of counsel's representation, it has been held that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id.* at 476 (citing *Rodriguez v. United States*, 395 U.S. 327 (1969); *Peguero v. United States*, 526 U.S. 23, 28 (1999)("when counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have merit")).

As discussed by the Court of Appeals in *Mabry*, several Courts of Appeals have interpreted *Flores-Ortega* and held that prejudice to a defendant is presumed if counsel failed to file a direct appeal as requested, even when the defendant has waived the right to file an appeal in a plea agreement. *Mabry*, 536 F.3d at 240 (citing *Campusano v. United States*, 442 F.3d 770 (2d Cir.2006); *United States v. Tapp*, 491 F.3d 263 (5th Cir.2007); *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1195-99 (9th Cir.2005); *United States v. Garrett*, 402 F.3d 1262 (10th Cir.2005); *Gomez-Diaz v. United States*, 433 F.3d 788, 791-94 (11th Cir.2005)). However, in *Mabry*, the Court of Appeals disagreed with this line of decisions, holding that "there is no reason to presume prejudice amounting to a miscarriage of justice in such a situation where the attorney's filing of an appeal would constitute a violation of the plea agreement." *Mabry*, 536 F.3d at 240-41. The is so because "*where there is a total appellate and collateral waiver*, 'counsel's duty to protect his or her client's interest

militates against filing an appeal' which could cost the client the benefit of the plea bargain against his or her best interest." *Id*. at 240 (emphasis in original)(quoting *Nunez v. United States*, 495 F.3d 544, 548 (7th Cir.2007), *vacated on other grounds*, --- U.S. ----, 128 S.Ct. 2990, --- L.Ed.2d ---- (2008)).

Here, Petitioner's grounds which he asserts as the basis for his requested appeal seek to challenge the sentence of 188 months imposed by the district court. The filing of such an appeal was clearly waived by the plea agreement and none of the exceptions to the plea agreement were met. Further, Petitioner admits that he was advised by his former counsel not to file an appeal. (*See* Docket No. 490-2 at 24). Therefore, Petitioner was not prejudiced by his former counsel's alleged failure to file the requested appeal and he is unable to establish ineffective assistance of counsel on these grounds.

C.    *Certificate of Appealability*

Finally, as Petitioner has not demonstrated a "substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court finds that he is not entitled to a certificate of appealability on the claims he has set forth in his Amended Motion.

VI.    CONCLUSION

Based on the foregoing, Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [459], as amended (Docket No. 490-2) is hereby DENIED. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: December 30, 2008

cc:     All counsel of record

        Petitioner Vernon Jackson, c/o Adam Cogan, Esq.